Affirmed and Memorandum Opinion filed August 21, 2008








Affirmed
and Memorandum Opinion filed August 21, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00671-CR

____________

 

DANIEL RAY SMITH, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 176th
District Court

Harris County, Texas

Trial Court Cause No. 1064737

 



 

M E M O R A N D U M   O P I N I O N

Appellant Daniel Ray Smith appeals his conviction for
capital murder.  In five issues, appellant challenges the sufficiency of the
evidence, the exclusion of a lesser-included offense in the jury charge, and
submission of a special issue regarding the use or exhibition of a deadly
weapon.  We affirm.

I.  Background








Complainant Norman Oshman was due to return to Houston late
Thursday evening, December 8, 2005, after a short business trip to Las Vegas. 
The complainant=s mother, Esther Oshman, knew that her son
was traveling and expected to hear from him when he returned.  By the next
evening, December 9, when Esther was unable to reach her son by telephone, she
became concerned and drove to the apartment with her other son, Gene Oshman. 
They entered the apartment using Esther=s spare key and
saw the complainant=s suitcase just inside the doorway.  They
found the complainant dead in his bedroom.  He had been tied up and severely
beaten.  He had multiple skull fractures, many of which were deep enough to
break through the skull and expose brain matter.  Blood was pooled on the bed
and splattered all over the room.  Gene called the police, and the
investigation began.

A removed window screen in the complainant=s bedroom, a muddy
footprint on the carpet under the window, and a newly positioned table under
the window led police to believe the intruder gained access to the apartment
through the window.  The complainant=s wallet was found
with a parking receipt, indicating that he had exited the airport parking lot
on December 8, 2005.  Police also discovered a piece of paper with internet
log-in names and passwords in the complainant=s apartment. 
Using this information, the police were able to access recent activity on the
complainant=s credit cards.  The records indicated that the
complainant=s American Express card had been used at a Diamond
Shamrock store at 4:45 a.m. on December 8, 2005, while the complainant was
still in Las Vegas.  This transaction was captured by video surveillance.  The
card was used again later that morning at a convenience store.  The records
also showed several transactions on other credit or bank cards occurring on
December 9 and 10 at a Sterling Bank ATM, a Royal Oaks Bank ATM, and a Chase
Bank ATM.  Video surveillance cameras recorded some of these transactions as
well.  The surveillance video from Chase Bank showed five attempted
transactions on December 10 using the complainant=s credit card.  An
Hispanic male made the first two withdrawal attempts, and a second male wearing
a ski mask, a dark leather coat, gloves, and dark colored shoes attempted the
rest of the transactions.  The video also showed the man wearing the ski mask and
dark coat urinating on the ATM. 








The suspect in the Diamond Shamrock surveillance video
drove a gray or silver late model foreign car with a spoiler on the back. 
After seeing the video played on the news, the complainant=s friend, Jay
Frank, observed a similar car parked near the complainant=s apartment
complex.  Frank reported the car and its license plate number to the police. 
The car was registered to appellant, and after executing a search and arrest
warrant, police arrested appellant and seized from appellant=s bedroom a black
leather jacket, shoes, and slacks similar to the ones seen in the surveillance
video.  In addition, a can of Copenhagen snuff was found in appellant=s apartment.  A
police officer testified that a can of Copenhagen snuff had been purchased at
the Diamond Shamrock store with the complainant=s credit card.

Appellant was charged with intentionally causing the death
of the complainant while in the course of committing or attempting to commit a
burglary by striking him with a baseball bat or an unknown object.  At trial,
the State submitted the surveillance videos into evidence.  Two witnesses
acquainted with appellant testified that the mannerisms of the person in the
Diamond Shamrock video and the mannerisms and clothing of the person wearing
the ski mask and dark jacket in the Chase Bank video were consistent with
appellant=s mannerisms and clothing.








The State also presented evidence from two inmates in whom
appellant had confided while in jail.  Randy Middlebrook testified that he
bunked next to appellant.  One evening after the lights were out, appellant
told Randy that he stopped praying a long time ago because he Aknew exactly what
he was doing when he killed that man.@  Appellant told
Randy he was in the complainant=s apartment looking for money and other
items to sell when the complainant came home.  Appellant claimed he had
murdered the Aheir to the Oshman sporting goods family.@  Randy testified
appellant said that from the blood splatter, the police thought it was a
shotgun, but that he had used a baseball bat.  Randy also testified that
appellant claimed he could tell Randy where the clothes and weapon used in the
murder and the stolen credit cards were hidden.  Jesse Capes, another inmate,
testified that appellant asked him whether it was possible to get AIDS from
blood that had spattered in appellant=s eye.  Appellant
also asked Jesse whether police could obtain a DNA sample from urine if
appellant had urinated on something outside.  According to Jesse, appellant
said the murder was a Aburglary gone bad.@  Jesse testified
to hearing appellant tell Randy that appellant had tied up a man and killed him
with a baseball bat, and that appellant could tell Randy where the clothes,
weapon, and credit cards were hidden.

A jury convicted appellant of capital murder and sentenced
him to life in prison.  On appeal, appellant argues that the trial court erred
in failing to instruct the jury on the lesser-included offense of burglary,
that the evidence is legally and factually insufficient to prove he used either
a baseball bat or an unknown object, and that the trial court erred in
submitting a special issue regarding the use of a deadly weapon because (1)
appellant did not receive proper notice and (2) the special issue constituted
an impermissible comment on the weight of the evidence.  

II.  Lesser-Included Offense

In his first issue, appellant claims the trial court erred
by refusing his request that the jury be instructed on the lesser-included
offense of burglary of a habitation.  The following two-prong test is used to
determine if a charge on a lesser-included offense should be given: (1) the
lesser-included offense is included within the proof necessary to establish the
offense charged and (2) there is some evidence that would permit a rational
jury to find that the defendant is guilty of the lesser offense but not guilty
of the greater.  See Tex. Crim.
Proc. Code Ann. art. 37.09(1) (Vernon 2006); Salinas v. State,
163 S.W.3d 734, 741 (Tex. Crim. App. 2005).








The indictment in this case required the State to prove
burglary or attempted burglary on December 9, 2005 as the underlying offense to
capital murder.[1] 
The jury charge stated, AA person commits the offense of burglary
of a habitation if, without the effective consent of the owner, he: (1) enters
a habitation with intent to commit a felony, theft, or an assault; or (2)
enters a habitation and commits or attempts to commit a felony, theft, or an
assault.@  Because proof of
the elements of burglary necessarily involved proof of the same or fewer facts
required to prove capital murder, the first prong is satisfied.  See Salinas,
163 S.W.3d at 741. 

In meeting the second prong of the test, there must be some
evidence from which a rational jury could acquit the defendant of the greater
offense while convicting him of the lesser-included offense.  Id.  Evidence
may indicate that a defendant is guilty only of the lesser offense if it
refutes or negates other evidence establishing the greater offense or if the
evidence is subject to different interpretations.  Saunders v. State,
840 S.W.2d 390, 391B92 (Tex. Crim. App. 1992) (en banc) (per
curiam).  That the jury may disbelieve crucial evidence pertaining to the
greater offense is not sufficient to warrant the submission of the
lesser-included offense to the jury; there must be some evidence directly
germane to the lesser-included offense to warrant such submission.  See
Skinner v. State, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997).  The evidence
must be evaluated in the context of the entire record.  Moore v. State,
969 S.W.2d 4, 8 (Tex. Crim. App. 1998) (en banc).  The credibility of the
evidence and whether it conflicts with other evidence should not be considered
when deciding whether the charge on the lesser offense should be given.  Saunders,
840 S.W.2d at 391.  If the defendant simply denies commission of the offense or
there is no evidence specifically raising an issue regarding an element of the offense,
then the charge on the lesser offense is not required.  Id. at 392.  








Appellant claims the trial court erred in refusing to give
a lesser-included offense instruction on burglary of a habitation because the
jury could have found appellant only burglarized the apartment on December 8,
2005 and that someone else committed the burglary and murder on December 9,
2005.  The proper inquiry is whether, when viewed in the light most favorable
to the defendant=s requested submission, the evidence is
sufficient for a rational jury to conclude that the State and the defendant are
proposing alternate versions of the same instance of conduct and not separate
instances of conduct.  Bufkin v. State, 207 S.W.3d 779, 783 (Tex. Crim.
App. 2006).  In other words, to be entitled to a lesser-included offense
instruction, a rational factfinder must have reason to believe that the
defendant=s scenario competes, rather than coexists, with the
State=s scenario.  Id.

The complainant returned home from Las Vegas sometime on
Thursday evening, December 9.  Although appellant used the complainant=s American Express
card before the complainant=s return, different cards belonging to the
complainant were used after the complainant returned home on December 9 and
10.  Accordingly, it would appear that the complainant=s apartment was
burglarized twice: once on December 8 when the American Express card was
stolen, and once on December 9 when the complainant came home and surprised the
intruder.  In support of his argument that there is evidence to support
submission of the lesser-included offense, appellant points to (1) an
unidentified palm print discovered near the window, which appellant claims
could have been left by a second burglar who committed the murder, and (2) the
unknown Hispanic male seen using the credit card in the Chase Bank surveillance
video. 








Appellant=s argument fails because although evidence
regarding the December 8 burglary was introduced at trial, it was a completely
separate offense.  The indictment charged appellant with committing murder in
the course of committing a burglary on December 9.  Therefore, appellant was
entitled to a lesser-included offense instruction on burglary of a habitation
if some evidence showed he committed only a burglary on December 9, but not the
accompanying murder.  The evidence to which appellant points merely supports
the inference that someone else committed both the burglary and murder on
December 9.  It does not tend to show that appellant may have committed only
the December 9 burglary but not the accompanying murder.  Because the evidence
at trial merely tended to show appellant may have committed a separate offense
from the one for which he was charged, we conclude he was not entitled to an
instruction on burglary of a habitation.  See id.; see also Hayward
v. State, 158 S.W.3d 476, 479B80 (Tex. Crim.
App. 2005) (concluding appellant who claimed she merely struck complainant with
fists and someone else stabbed complainant was not entitled to lesser-included
offense instruction on assault because hitting with fists was a separate crime
not alleged in indictment); Campbell v. State, 149 S.W.3d 149, 155B56 (Tex. Crim.
App. 2004) (holding evidence did not support lesser-included offense
instruction because evidence that appellant claimed could prove lesser offense
actually proved a separate crime from offense for which appellant was charged).[2] 
We overrule appellant=s first issue. 

III.  Sufficiency of the Evidence

In his second and third issues, appellant contends the
evidence is legally and factually insufficient to show that he caused the death
of the complainant by striking him with a baseball bat or an unknown object. 
In reviewing a legal sufficiency challenge, we view the evidence in the light
most favorable to the verdict and determine whether a rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.  Salinas, 163 S.W.3d at 737.  We accord great deference Ato the
responsibility of the trier of fact [to fairly] resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.@  Jackson v. Virginia, 443 U.S.
307, 319 (1979).  We presume that any conflicting inferences from the evidence
were resolved by the jury in favor of the prosecution, and we defer to that
resolution.  See id. at 326.  








In evaluating the factual sufficiency of the evidence, we
view all the evidence in a neutral light and will set aside the verdict only to
prevent manifest injustice.  Watson v. State, 204 S.W.3d 404, 414 (Tex.
Crim. App. 2006).  We apply a two-prong test to determine whether there is some
objective basis for finding that (1) the evidence in support of the jury=s verdict,
although legally sufficient, is nevertheless so weak that the verdict seems
clearly wrong and unjust, or (2) in considering conflicting evidence, the
verdict, albeit legally sufficient, is nevertheless against the great weight
and preponderance of the evidence.  Id. at 414B15.  Although a
factual sufficiency review authorizes an appellate court to act in the capacity
of a so‑called Athirteenth juror,@ due deference
must be accorded the fact finder=s determinations,
particularly those determinations concerning the weight and credibility of the
evidence.  See id. at 416B17; Johnson v.
State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).

Appellant argues the evidence is insufficient because at
trial the State presented evidence that appellant used a lamp as the murder
weapon, but the indictment and jury charge alleged that he used either a
baseball bat or an unknown object to murder the complainant.  When multiple
theories are submitted to the jury, the evidence is sufficient to support a
conviction so long as the evidence is sufficient to support a conviction for
one of the theories submitted.  Guevara v. State, 152 S.W.3d 45, 52
(Tex. Crim. App. 2004).  

Robert Gutierrez, a crime scene investigator for the
Houston Police Department, testified that during the course of his
investigation, the officers determined that the complainant was bludgeoned to
death with a lamp.  Crime scene pictures showed that a lamp covered with blood
was found next to the complainant=s body.  Gutierrez
testified that he was able to compare the shape of the lamp base with the
complainant=s injuries.  However, both Randy and Jesse, the
inmates in whom appellant confided, testified that appellant claimed he used a
baseball bat to kill the complainant and that he could tell the inmates where
the bat was hidden.  Dr. Albert Chu, the medical examiner who performed the
autopsy on the complainant, testified that the cause of death was blunt force
head trauma caused by a blunt object.  Dr. Chu also testified that either a
baseball bat or a lamp could have caused the injuries, but that he could not
tell from the injuries exactly what type of object was used.








The jury is the exclusive judge of the credibility of
witnesses and of the weight to be given testimony, and it is within the
exclusive province of the jury to reconcile conflicts in the evidence.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The jury may have
chosen to reconcile the conflict between Gutierrez=s testimony and
the inmates= testimony by concluding that the murder weapon was a
baseball bat.  In addition, Dr. Chu testified that a baseball bat could have
caused the injuries.  Because there is evidence from which a rational jury
could have determined that a baseball bat was used to murder the  complainant,
and because this determination is not manifestly unjust, we conclude that the
evidence is legally and factually sufficient to support appellant=s conviction.  See
Guevara, 152 S.W.3d at 52; Ledee v. State, No. 14‑04‑01018‑CR,
2005 WL 3359714, at *2 (Tex. App.CHouston [14th
Dist.] Dec. 6, 2005, no pet.) (not designated for publication) (sustaining
conviction where indictment alleged defendant used either his Ahands@ or an Aunknown object@ because evidence
was sufficient to support one theory charged).  We overrule appellant=s second and third
issues.

IV.  Special Issue Regarding Use of a Deadly Weapon

In his fifth issue, appellant claims the trial court erred
in submitting a special issue regarding the use or exhibition of a deadly
weapon because appellant did not receive notice that the State intended to seek
a finding on the use of a deadly weapon.  In his fourth issue, appellant claims
submission of the special issue amounted to an impermissible comment on the
weight of the evidence by the trial court. 








A defendant is entitled to notice that the State will seek
an affirmative finding that a deadly weapon was used during the commission of
the charged crime.  Brooks v. State, 847 S.W.2d 247, 248 (Tex. Crim.
App. 1993) (en banc) (per curiam).  Such notice need not be contained in the
indictment under which the defendant is ultimately tried.  Id.  The
defendant is simply entitled to notice in writing that the use of a deadly
weapon will be a fact issue at the time of prosecution.  Id.  Here, the
indictment alleged that while in the course of committing or attempting to
commit a burglary of a habitation, appellant intentionally caused the death of
the complainant by striking the complainant with a baseball bat or an unknown
object.  Any allegation that a death was caused by a named weapon or instrument
necessarily includes an allegation that the named weapon or instrument was
capable of causing death in the manner it was used.  Ex parte Beck, 769
S.W.2d 525, 526 (Tex. Crim. App. 1989).  Accordingly, the indictment gave
appellant sufficient notice that the State would attempt to prove that a
baseball bat or an unknown object was used as a deadly weapon.  See id.
at 526B27 (holding
indictment charging appellant with causing death by shooting individual with a
gun provided sufficient notice that weapon alleged was a deadly weapon and that
appellant=s use of deadly weapon would be an issue in State=s murder
prosecution).  We overrule appellant=s fifth issue.

Having determined that appellant received proper notice
that the State intended to seek a deadly weapon finding, we turn now to
appellant=s fourth issue.  Appellant argues that the trial court
improperly commented on specific evidence by submitting a special issue
regarding the use or exhibition of a deadly weapon.  The special issue
submitted to the jury read in part, ADo you the Jury
find beyond a reasonable doubt that the defendant used or exhibited a deadly
weapon, namely, a baseball bat or an unknown object, during the commission of
the offense for which he has been convicted . . . ?@  Appellant
contends that by ignoring the evidence that a lamp was possibly used as a
murder weapon, the trial court enhanced the credibility of the inmates who
testified that appellant admitted to using a baseball bat by telegraphing to
the jury that the trial court believed the inmates= testimony. 








The jury charge should state the law applicable to the
case, without expressing or intimating any opinion as to the weight of the evidence
or the credibility of the statements made by the witnesses or the party
accused.  See Tex. Code Crim.
Proc. Ann. art. 36.14 (Vernon 2007); Russell v. State, 749 S.W.2d
77, 78 (Tex. Crim. App. 1988).  A charge improperly comments on the evidence if
it Aassumes the truth
of a controverted issue.@  See Whaley v. State, 717 S.W.2d
26, 32 (Tex. Crim. App. 1986); Jackson v. State, 105 S.W.3d 321, 326
(Tex. App.CHouston [14th Dist.] 2003, pet. ref=d).  Because
appellant did not timely object to the special issue at trial, the error, if
any, does not require reversal unless it was so egregious and created such harm
that appellant was denied a fair trial.  Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1984).  When a complaint is made that the charge
comments on the weight of the evidence, we review the charge as a whole rather
than parts of the charge standing alone.  See Whaley, 717 S.W.2d at 32. 
The actual degree of harm must be assayed in light of the entire jury charge,
the state of the evidence, including the contested issues and the weight of
probative evidence, the argument of counsel, and any other relevant information
revealed by the record of the trial as a whole.  Almanza, 686 S.W.2d at
171.  Errors resulting in egregious harm are those that affect the very
basis of the case, deprive the defendant of a valuable right, or vitally affect
a defense theory.  Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App.
1996).








The evidence shows that either a baseball bat or a lamp was
used to murder the complainant.  Neither the prosecution nor the defense
mentioned the special issue during closing argument.  The special issue defined
Adeadly weapon@ for the jury and
asked the jury to determine whether appellant used or exhibited a baseball bat
or an unknown object in the murder of the complainant, tracking the language of
the indictment.  The trial court made no other comments regarding the inmates= testimony or
emphasizing evidence that a baseball bat was used.  Accordingly, we find that
the special issue merely directed the jury=s attention to the
fact that a baseball bat or an unknown object were the weapons for which the
State sought an affirmative finding, and the trial court did not impermissibly
comment on the weight of the evidence by not including a lamp as a possible
deadly weapon in the special issue.  See Jackson v. State, No. 05‑06‑01127‑CR,
2008 WL 2548812, at *2 (Tex. App.CDallas June 26,
2008, no pet. h.) (mem. op., not designated for publication) (holding that
telling jury special issue instruction was on last page of jury charge was not
an impermissible comment on weight of evidence because trial court made no
statement showing bias in presentation of deadly weapon issue to jury); Hancock
v. State, No. 11‑95‑001‑CR, 1996 WL 33650186, at *1B2 (Tex. App.CEastland Jan. 17,
1996, no writ) (not designated for publication) (holding special issue that
tracked language of indictment and alleged appellant used Aa bridge, a rock,
his fist, his foot or another object unknown@ to assault the
complainant did not inform jury that any particular weapon had been used and
therefore was not impermissible comment on weight of evidence). 

Moreover, because a lamp was not mentioned in the
indictment, inclusion of a lamp as a possible murder weapon in the special
issue would actually have drawn attention to the evidence that a lamp was
used.  Such an instruction would not have been neutral, and the trial court would
have improperly commented on the weight of the evidence by including the
instruction.  See Matamoros v. State, 901 S.W.2d 470, 477 (Tex. Crim.
App. 1995) (stating in regard to denial of request for charge instruction on
DNA evidence reliability, AEven a seemingly neutral instruction about
a particular type of evidence constitutes an impermissible comment on the
weight of the evidence in violation of Art. 36.14 because such an instruction
singles out a particular piece of evidence for special attention.@); see also
Wilson v. State, No. 13‑04‑00298‑CR, 2007 WL 1559104,
at *2 (Tex. App.CCorpus Christi May 31, 2007, pet dism=d) (mem. op., not
designated for publication) (holding refusal of defendant=s request for jury
instruction that trial court was not vouching for accuracy of videotape played
into evidence was not error because such instruction was not neutral and
singled out videotape for special attention).  We overrule appellant=s fourth issue.  

We affirm the trial court=s judgment.

 

/s/      Leslie B. Yates

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed August 21, 2008.

Panel consists of
Justices Yates, Anderson, and Brown.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  A person commits capital murder if he intentionally
and knowingly causes the death of an individual while in the course of
committing or attempting to commit burglary.  Tex.
Penal Code Ann. __ 19.02(b)(1), 19.03(a)(2) (Vernon 2003 & Supp.
2007).





[2]  Appellant relies on Curtis v. State, 89
S.W.3d 163, 179 (Tex. App.CFort Worth
2002, pet. ref=d) for his argument that he was entitled to a
lesser-included offense instruction on burglary of a habitation.  The defendant
in Curtis was convicted of capital murder.  Id. at 166.  On
appeal, the court found that because evidence showed the defendant could have
sexually assaulted the complainant days or hours before her murder and that
more than one person had entered the complainant=s apartment the night of the murder, the trial court should have
instructed the jury on the lesser-included offenses of sexual assault and
aggravated sexual assault.  Id. at 179.  Curtis is distinguishable
because unlike the instant case, the defendant in Curtis claimed he had
committed a lesser version of the crime for which he was charged.  Id. at
178.  In contrast, appellant claims he is completely innocent of the crime for
which he was charged, capital murder on December 9, 2005, and argues instead
that he is guilty of a separate offense for which he was not charged, burglary
on December 8, 2005.  We therefore find appellant=s reliance on Curtis misplaced.