John Lowell BUFKIN, Appellant,

v.

The STATE of Texas.

No. PD–0012–06.

Court of Criminal Appeals of Texas.

Nov. 1, 2006.

Rehearing Denied Dec. 20, 2006.

Brian M. Middleton, Houston, for appellant.

Jeffrey L. Van Horn, First Asst. State's Atty., Matthew Paul, State's Atty., Austin, for State.

KELLER, P.J., delivered the opinion of the Court in which MEYERS, PRICE, HOLCOMB, and COCHRAN, JJ., joined.

Our "on or about" jurisprudence recognizes that it is often impractical to require an indictment to specify (or the State to prove) the exact time that a crime occurred.[1] But in granting the State leeway regarding the time the offense occurred, that jurisprudence has created some subsidiary issues that we are occasionally called upon to address. Most commonly, we have been called upon to address how to handle what are clearly multiple instances of conduct that each appear to satisfy the indictment's allegations.[2] The present case involves a somewhat different scenario: how to determine whether the conduct depicted by the respective parties describes multiple instances of conduct or only one instance of conduct. Whether the defendant in this case was entitled to a defensive instruction on consent depends upon whether or not the evidence supporting that instruction related to an instance of conduct upon which the State relied for conviction or to a different instance of conduct that simply happened to also conform to the indictment's allegations. We conclude that the defendant's evidence related to an instance of conduct upon which the State relied for conviction, and as a result, we affirm the judgment of the court of appeals.

## I. BACKGROUND

### A. Trial

Appellant was charged by information with family-violence assault.[3] The information alleged that the assault occurred "on or about August 9, 2003," and specified in separate paragraphs two different factual methods of committing the assault:

#### Paragraph A.

[The defendant did] intentionally, knowingly, or recklessly cause bodily injury to Shelby Hooper by striking her with the defendant's hand.

#### Paragraph B.

[The defendant did] intentionally, knowingly, or recklessly cause bodily injury to Shelby Hooper by biting her.

At trial, the State introduced evidence that the police were dispatched to a hotel room that had recently been the scene of an altercation between appellant and Hoo-

---

1. See *Sledge v. State*, 953 S.W.2d 253, 255–256 (Tex.Crim.App.1997); *Campbell v. State*, 149 S.W.3d 149, 156 (Tex.Crim.App.2004)(Keller, P.J., concurring).

2. See *Campbell*, 149 S.W.3d at 156 (Keller, P.J., concurring).

3. Tex. Pen.Code § 22.01(a)(1), (b)(2).

per. Hysterical and crying, Hooper told the officers that appellant had struck her with his fists and bitten her. Consistent with Hooper's statements, officers observed a cut on her lip and bite marks on her back and buttocks. After admitting, during questioning, that he had hit Hooper in the head with a closed fist, appellant was arrested.

Hooper testified for the defense. She stated that she had provided the police with a misleading picture of what really occurred on the evening of the alleged assault. With regard to the allegation that appellant hit her with his hand, she claimed that she was the aggressor that evening and that appellant was simply defending himself. With regard to the bite allegation, she denied that she was bitten on August 9th and claimed that the bite marks on her body were actually the result of "love bites" that were a part of consensual sexual activity occurring on the prior evening (August 8th).[4]

At the jury charge conference, appellant requested consent instructions in connection with both the alleged striking and the alleged biting. The trial court denied these requests. The court did, however, submit an instruction on self-defense. With regard to the elements of the offense, the charge's application paragraph instructed the jury to find appellant guilty if it found "from the evidence beyond a reasonable doubt that on or about August 9, 2003, in Fort Bend County, Texas, the defendant did intentionally, knowingly, or recklessly cause bodily injury to Shelby

Hooper by striking her with his hand or by biting her."[5] The jury found appellant guilty.

## B. Appeal

The court of appeals reversed, holding that Hooper's testimony that the bite was consensual was sufficient to raise the defense of consent[6] as to the biting allegation, and consequently, appellant was entitled to the consent instruction as to that allegation.[7] The appellate court subsequently decided it could not find the error harmless under the standard applicable to non-constitutional error because it could not determine whether the jury convicted on the basis of biting or striking (or both) and because "whether Hooper was assaulted was a determination for the jury to make."[8]

## II. ANALYSIS

 The State's position is that Hooper's testimony concerning "love bites" occurring on August 8th and the police testimony regarding unwanted biting occurring on August 9th described separate instances of conduct. Appellant contends that the same instance of conduct was described, and there was simply a dispute about the timing and nature of that single instance of conduct. It is certainly true that the defendant cannot foist upon the State a crime the State did not intend to prosecute in order to gain an instruction on a defensive issue or a lesser included offense.[9] But it is also true that the defendant has the right to controvert the facts upon

---

4. "The victim's effective consent ... is a defense to prosecution under Section 22.01 (Assault) ... if ... the conduct did not threaten or inflict serious bodily injury." See Tex. Pen. Code § 22.06(1).

5. The words "on or about" were not defined in the charge.

6. See Tex. Pen.Code § 22.06(1).

7. Bufkin v. State, 179 S.W.3d 166, 173 (Tex. App.-Houston [14th Dist.] 2005).

8. Id. at 175. The State's petition for discretionary review does not complain about the harm analysis.

9. See Campbell, 149 S.W.3d at 157 (Keller, P.J., concurring).

which the prosecution intends to rely, and that right includes claiming that events unfolded in a way different than the State has alleged.

In resolving the issue before us, we must first keep in mind that we do not apply the usual rule of appellate deference to trial court rulings when reviewing a trial court's decision to deny a requested defensive instruction (whether for the submission of a defense or for a lesser-included offense). Quite the reverse, we view the evidence in the light most favorable to the defendant's requested submission.[10] We also find it helpful to examine the facts and reasoning in *Campbell v. State*,[11] which serves mainly as a useful contrast to this case but also contains some pronouncements relevant to framing the issue currently before us.

In *Campbell*, the defendant was prosecuted for possession of between 4 and 200 grams of methamphetamine with intent to distribute.[12] At trial, the State introduced evidence that 8.64 grams of this substance was found in a backpack in the back seat of a maroon Cadillac in which Campbell was a passenger.[13] Campbell took the witness stand and denied owning the drugs found in the Cadillac (casting blame on his estranged wife), but he admitted to possessing less than one gram of methamphetamine in a toolbox in his truck at the motel where he had been picked up.[14] He claimed that his testimony was sufficient to raise the lesser-included offense of possession of methamphetamine under one gram.[15]

In rejecting this contention, we undertook to determine whether there were "two distinct criminal acts."[16] We indicated that certain factual elements "such as time, place, identity, manner, and means" were relevant to this type of inquiry.[17] We subsequently observed that the narcotics that Campbell confessed to possessing "were at a different location than those for which the State offered proof," and we found "no evidence in the record linking the possession of the narcotics in the backpack in the Cadillac to the possession of the narcotics [in the toolbox] in the truck."[18] We concluded that a close look at the facts revealed that "the alleged possession to which appellant confessed [was] a separate offense, unrelated to the crime for which he was charged."[19] Consequently, we found that possession of the drugs in the truck did not constitute a lesser-included offense of possession of the drugs in the Cadillac.[20]

As in *Campbell*, the question here is whether we are dealing with distinct instances of conduct or alternative versions of the same instance of conduct. That inquiry must, of course, be conducted within the proper standard of review: in the light most favorable to the defendant's re-

10. *See Ferrel v. State,* 55 S.W.3d 586, 591 (Tex.Crim.App.2001)(evidence supporting self-defense instruction viewed in light most favorable to defendant); *Campbell v. State,* 614 S.W.2d 443, 445–446 (Tex.Crim.App.1981)(question of whether to submit lesser-included offense charge determined as a defensive issue: the truth of the accused's testimony is not at issue).

11. 149 S.W.3d 149 (Court's op.).

12. *Id.* at 150.

13. *Id.*

14. *Id.* at 151, 155.

15. *Id.* at 151.

16. *Id.* at 155.

17. *Id.*

18. *Id.*

19. *Id.*

20. *Id.* at 155–156.

quested instruction. Consequently, the inquiry is whether, viewed in the light most favorable to the defendant's requested submission, the evidence is sufficient for a rational jury to conclude that the State and the defendant are proposing alternate versions of the same instance of conduct rather than separate instances of conduct. In other words, a rational factfinder must have reason to believe that the defendant's scenario competes, rather than coexists, with the State's scenario. For the former to occur, it seems to be generally, perhaps always, true that the evidence must reveal some sort of connection between the two described instances that suggests that they are, in fact, only one instance. Our "on or about" jurisprudence has often focused on when and under what circumstances the State is required to elect between *multiple* instances of conduct that appear to conform to the allegations of the charging instrument. But, if there is evidence that the parties' respective scenarios compete, then there is no occasion for the State to elect: the parties are not presenting multiple instances of conduct but are presenting alternate versions of the same instance, at least for the purpose of determining whether to grant the submission of the defendant's requested charge.

A classic situation in which the parties may dispute the timing of an offense is in a murder prosecution. Obviously, a person cannot be killed twice, so a claim by the defense that the victim was killed on a different day than alleged by the State's evidence amounts to proposing an alternate version of the offense rather than a separate offense. A defendant might, for example, claim that the killing was with "sudden passion" so as to obtain the sudden passion mitigating instruction at the punishment phase of trial, or under older law, a voluntary manslaughter instruction at the guilt phase of trial. Perhaps this hypothetical defendant produces evidence that on the day before the alleged date of the offense, the victim and the defendant had a heated argument of a nature that raised sudden passion, and that the argument was witnessed by a third person. In that scenario, the defendant might claim the victim was killed the same day as the argument, under sudden passion, but the State might claim that the killing occurred a day later, after the passion should have cooled. Both parties' claims are connected by the evidence that the victim is dead. Each party is trying to explain the fact of the death, and those explanations involve the offense occurring at different points in time.

In the present case, appellant's proffered instance of conduct was temporally separated by a day from the instance of conduct relied upon by the State. But the defensive story presented here is similar to the murder example and differs from *Campbell* in two crucial respects: (1) the defensive evidence in this case denied that the State's proffered "unwanted biting" incident ever occurred, claiming *instead* that a "love bites" incident occurred, and (2) the bite marks supplied an evidentiary connection between the two proffered instances that suggested they were one. The State claimed that the bite marks were produced during a non-consensual assault occurring on August 9th while appellant claimed that those very same marks were produced, *instead,* during a consensual sexual encounter occurring on August 8th.

With regard to the first point of distinction, we observe that appellant's case would have been like *Campbell* if appellant had claimed that he gave Hooper "love bites" on August 8th and that *someone else* bit Hooper on August 9th, and for whatever reason, Hooper decided to blame the incident on appellant. Campbell simply failed to even suggest that there was only one instance of conduct being discussed in

his case. He did not claim that the State had failed to accurately measure the quantity of methamphetamine in the Cadillac, nor did he claim that the drugs were not actually present there but were, in fact, somewhere else (i.e. the truck). Rather, he admitted the existence of the drugs in the Cadillac, but disassociated himself from them, and claimed different drugs as his own. Even if Campbell had possessed evidence arguably linking him to both stashes of the drugs—if, for example, a lab analysis had revealed traces of methamphetamine on his clothes—the story he presented did not deny the existence of the stash of methamphetamine upon which the State relied, so connection to the stash in the truck could not in any way absolve him of connection to the stash in the Cadillac.

Of course, Campbell provided no such connecting evidence. He denied possessing the drugs in the Cadillac, but this bare denial of the State's claim was immaterial to whether *the instance of conduct* that he claimed occurred (possession in the truck) served in any fashion to rebut the State's claim. By contrast, the bite marks in the present case supplied a reason for the factfinder to believe that the parties were in fact referring to the same incident. Without the bite marks in this case, there would be no basis, apart from appellant's bare denial of the State's version of events, for concluding that the evidence described one incident instead of two. As with the dead body in the hypothetical murder defendant's case, the bite marks here served to tie the two scenarios together, making them alternative versions of one event. Appellant's scenario was an alternate explanation for the appearance of those marks: giving the jury the task of deciding whether the marks were produced by "love bites" on August 8th or by an assault on August 9th. The bite marks were used by

the State as evidence that the crime was committed; the alternate story supplied by the defense was an attempt to explain that evidence away.

Because the instances of conduct respectively supported by the parties were in competition, the defendant was entitled to his defensive instruction. Without the consent instruction, the jury charge authorized conviction for biting even if the jury believed the defense's scenario. This is so because the "love bites" incident satisfied the elements of assault that were outlined in the submitted jury instructions. "Lack of consent" is not an element of assault under § 22.01; rather, "consent" is set up as a defense to assault under § 22.06: "The victim's effective consent . . . is a defense to prosecution under Section 22.01 (Assault) . . . if . . . the conduct did not threaten or inflict serious bodily injury."[21] The jury charge tracked the language of § 22.01 but did not include the language of § 22.06. And because the jury charge included the standard "on or about" language in its application paragraph—giving the State leeway (as it should) in proving when the offense occurred—conduct consisting of "consensual biting on August 8th" was encompassed by the application paragraph's allegations. The consent instruction is what would have given the jury a vehicle to effectuate any belief in the defendant's claim that the biting incident, and the bite marks that resulted, were a product of consensual conduct that was not against the law.

It is true that the State also prosecuted appellant for striking Hooper with his hand. But the jury charge submitted the biting and striking allegations in the disjunctive, so the defendant's proposed instruction was needed to rebut a theory of liability upon which the jury could have

---

**21.** Contrast with the offense of sexual assault, which, at least in some cases, incorporates lack of consent as an element. Tex. Pen.Code § 22.011(a)(1)(A)-(C).

decided to solely rely.[22] We conclude that the court of appeals was correct in holding that the trial court erred in denying the defendant's requested instruction.

The judgment of the court of appeals is affirmed.

JOHNSON, J., concurred in the result.

HERVEY, J., dissented.

WOMACK and KEASLER, JJ., did not participate.

---

22. Had the jury instructions charged the hitting and biting theories *conjunctively,* an argument could be made that the "love bites" incident, which did not include hitting, could not have served as a basis for conviction, even under the charge's "on or about" language. But that is not the case before us.