**AFFIRM; and Opinion Filed July 23, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00404-CR

**MICHAEL DWAYNE NEWMAN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F-1162630-J**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Lang-Miers

Appellant Michael Dwayne Newman was charged with aggravated assault with a deadly weapon. He pleaded not guilty and was convicted by a jury of the lesser included offense of deadly conduct. In accordance with an agreement between appellant and the State as to punishment, the trial court assessed a $1,500 fine and sentenced appellant to five years in prison, but suspended the sentence and placed appellant on community supervision for a period of five years. In three issues on appeal appellant argues that (1) the evidence is insufficient to support his conviction for deadly conduct, (2) the trial court abused its discretion when it refused to instruct the jury on defense of property, and (3) the evidence is insufficient to support the assessment of court costs against appellant. We affirm.

BACKGROUND

**Undisputed Facts**

The State's indictment alleged that appellant assaulted Justin Horn with a firearm on or about December 3, 2011. At the time of the offense, appellant and Horn lived in the same building of an apartment complex. The two men knew each other and referred to each other by nicknames—appellant called Horn "Youngster," and Horn called appellant "Old School." Appellant lived on the second floor and Horn lived on the third floor. The apartments have outside entrances, and both appellant's apartment and Horn's apartment were near the same staircase. As shown in State's Exhibit 4, that staircase ascends halfway from the second floor to the third floor, opens onto a small landing, and reverses direction before proceeding to the third floor.



A shell casing was found on the landing shown in State's Exhibit 4. Appellant admits that he fired his gun on that landing on December 3, 2011 shortly after speaking with Horn.

**Horn's Testimony**

Horn testified that appellant pulled a gun on him twice—first on December 2, and then again on December 3. Until December 2 he and appellant were "[r]eal good neighbors." Horn heard that someone driving a green truck had recently tried to break into appellant's apartment. Horn owned a green truck and wanted to make sure that appellant did not think that Horn was involved in the attempted break-in. So when Horn saw appellant on December 2, Horn tried to talk to appellant. But when Horn tried to tell appellant that he was not involved in the attempted break-in, appellant "snapped" and "[e]verything changed." Appellant pulled a gun on Horn and Horn called the police. The police arrived and spoke to Horn. They later returned to Horn's apartment and told him that they spoke to appellant but did not find a gun on him.

The next day, Horn arrived at the apartment complex at approximately 7:20 p.m. He had his fiancée's 11- or 12-year-old brother with him. As the two of them walked past appellant's door on the second floor and started up the stairs toward Horn's third-floor apartment, appellant "came out [of his] apartment with a gun in his hand and said, 'You think I'm playing with you.'" Horn asked appellant what was going on, but appellant just kept saying, "You think I'm playing with you." Appellant followed Horn up the stairs and pointed his gun within inches of Horn's face. Horn described appellant's gun for the jury, and identified State's Exhibit 9 as a picture of appellant's gun. Appellant told Horn, "[Y]ou better count your days." Horn's fiancée, Jasmine Coulson, came out of their apartment to see what was going on. Horn told her to go back inside and pushed her and her brother into the apartment. Appellant said, "Now you've put her in it. Now you've put your family in it." Horn went inside the apartment, closed the door, and heard a gunshot. Then he heard appellant outside the door yelling, "[W]hoo, whoo, now you done made me mad. Now you done made me mad." Horn called the police.

**Coulson's Testimony**

Coulson testified that she was home on December 3 when she heard loud voices outside their apartment. She opened her door and saw appellant pointing a gun at Horn. Appellant said to Horn, "[Y]ou better count your days." Coulson said to appellant, "[S]ir, I have two little girls that stay here." Appellant said to Horn, "Now you got your girl involved. Now your family is involved." According to Coulson, appellant ran towards them, so Horn, Coulson, and her brother ran inside the apartment and closed the door. After they closed the door they all heard a gunshot and "hit the floor." Coulson then ran to the phone and called the police.

**Appellant's Testimony**

Appellant's testimony conflicted with the testimony of Horn and Coulson. Appellant testified that he saw Horn try to break into his apartment at 2:00 a.m. on November 26, 2011 through the balcony door.

As to the events on December 2, appellant testified that he spoke to Horn that day, "but there was no name calling[,] no threats, no high-adrenaline conversation."

As to the events on December 3, appellant testified that when he arrived at his apartment complex at 7:20 p.m. and parked his car, he looked up and "noticed a pair of feet" near his doorway. As he walked up the stairs he saw Horn with his ear to appellant's door "trying to listen in" to see if appellant was home. Horn pulled his ear off the door and turned around quickly. Horn started saying, "Old School, Old School" loudly, "as if he was trying to warn someone or let someone else know" that appellant had arrived home. Appellant asked Horn, "[W]hat are you doing on my door?" Horn started going up the stairs and said, "Old School, man, why you so angry, man?" Coulson came out of their apartment and said, "[W]e have children." Appellant said, "[M]a'am, I would never, ever try to bring trouble to your home, but your man is doing things to people and me right now personally that it's got to stop. He's been

–4–

doing some stuff that you probably don't know about." After Horn was inside his apartment, appellant was standing on the landing between the second and third floor when he saw a man standing on appellant's second-floor balcony. He recognized the man as the person who had assisted Horn in attempting to break into appellant's apartment a week earlier. After they made eye contact, appellant pulled his gun out and "shot at least three or four feet above his head to give him a warning," and the guy jumped over the railing and fled. In other words, appellant admitted firing his gun once while standing on the landing between the second and third floor, but he testified that he shot his gun down towards the second floor, not up towards Horn's apartment. Appellant denied ever pulling his gun on Horn.

The trial court granted appellant's request to instruct the jury on both aggravated assault and deadly conduct. The jury convicted appellant of deadly conduct.

## FIRST ISSUE

In his first issue appellant argues that the evidence is insufficient to support his conviction for deadly conduct.

When assessing the sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Dobbs v. State*, PD-0259-13, 2014 WL 2865908, at *3 (Tex. Crim. App. June 25, 2014). The jury is the sole judge of the witnesses' credibility and the weight to be attached to their testimony. *Id.* When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Id.* Each fact does not need to point directly and independently to the defendant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.*

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

The indictment in this case alleged that appellant committed aggravated assault with a deadly weapon against Horn by intentionally and knowingly threatening him with imminent bodily injury using a firearm. A person commits the offense of deadly conduct if the person knowingly discharges a firearm at or in the direction of one or more individuals. TEX. PENAL CODE ANN. § 22.05(b)(1) (West 2011).

The evidence is sufficient to support appellant's conviction for deadly conduct if it supports a finding that he discharged his firearm at or in the direction of Horn.[1] Appellant argues that there is no evidence that he fired his gun at or in the direction of Horn because (1) Horn and Coulson were inside their apartment at the time, (2) appellant testified that he shot his gun down the stairs towards his balcony, not up the stairs towards Horn, and (3) there was no other evidence as to the trajectory of the fired shot. In response, the State essentially argues that the circumstances surrounding the discharge of appellant's firearm support the jury's conclusion that appellant knowingly discharged his firearm at or in the direction of Horn. We agree with the State.

---

[1] In the context of his sufficiency complaint appellant notes that the jury charge allowed the jury to convict appellant of deadly conduct if they found that he knowingly discharged his firearm in the direction of Horn "or others." Horn also states that the "or others" language "improperly expanded the allegations of the original indictment to include additional unidentified victims that were not contained in the original indictment." But Horn does not argue that his conviction should be reversed based on jury-charge error in connection with the "or others" language.

Viewing the evidence in the light most favorable to the jury's verdict, the evidence showed that appellant confronted Horn and waved a gun in Horn's face as Horn passed by appellant's apartment. Appellant followed Horn up the stairs and kept saying, "You think I'm playing with you." Appellant also told Horn to "count [his] days." When Coulson stepped out into the breezeway, Horn pushed her back into their apartment and closed the door behind them. Appellant immediately fired his gun and Horn and Coulson "hit the floor." Then Horn heard appellant outside Horn's door yelling, "Now you've done made me mad!" Further, appellant admits that he knowingly discharged his firearm.

Having considered all of the evidence in this case in the light most favorable to the jury's verdict, including the events occurring immediately before and after appellant discharged his firearm, we conclude that a rational jury could have found beyond a reasonable doubt that appellant knowingly discharged his firearm at or in the direction of Horn. *See, e.g.*, *Vestal v. State*, No. 08-09-00101-CR, 2010 WL 2844803, at *5–6 (Tex. App.—El Paso July 21, 2010, pet. ref'd) (not designated for publication) (although appellant testified he shot at a sandbag on the ground and not at complainants, evidence was sufficient to support conviction for deadly conduct because events occurring before and after appellant fired his gun, including appellant yelling at complainants before he fired and one complainant ducking after hearing the shot, supported the jury's conclusion that appellant shot at or in the direction of complainants). As a result, the evidence is sufficient to support appellant's conviction. We resolve appellant's first issue against him.

### SECOND ISSUE

In his second issue appellant argues that the trial court erred when it refused his request for a jury instruction on defense of property. *See* TEX. PENAL CODE ANN. §§ 9.02, 9.41–.42

(West 2011).  Appellant argues that he was entitled to the instruction because he testified that he shot his gun to prevent another attempted burglary of his apartment.

When we review a claim of jury-charge error, we first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).  If we conclude there was error, we then determine whether the error caused sufficient harm to require reversal of the conviction.  *Id.* at 743–44.

When a defensive theory is raised by evidence from any source and a charge is properly requested, it must be submitted to the jury.  *Shaw v. State,* 243 S.W.3d 647, 662 (Tex. Crim. App. 2007).  We review a trial court's decision not to include an instruction on a defensive issue in the jury charge for abuse of discretion, and we view the evidence in the light most favorable to the defendant's requested submission.  *See Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

Defense of property is a justification defense.  *See* TEX. PENAL CODE ANN. §§ 9.02, 9.41–.42.  A justification defense "does not negate any element of the offense, including culpable intent; it only excuses what would otherwise constitute criminal conduct."  *Shaw*, 243 S.W.3d at 659.  In order to raise a justification defense, a defendant must admit violating the statute under which he is being tried and then offer a statutory justification for his otherwise criminal conduct.  *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999).

Appellant was charged with intentionally and knowingly threatening Horn with imminent bodily injury using a firearm.  Here, however, appellant expressly denied that he threatened Horn with a gun and also denied firing a gun at or in the direction of Horn.  Given that he denied the allegations against him at trial, appellant was not entitled to a defense-of-property instruction.  *See, e.g.*, *id.* at 839 (appellant not entitled to a jury instruction on justification defense because he did not admit he committed the alleged offense).  As a result, we conclude that the trial court did

not abuse its discretion when it declined to provide the requested instruction. We resolve appellant's second issue against him.

**THIRD ISSUE**

In his third issue appellant argues that the trial court's judgment should be reformed to delete the assessment of $244 in court costs against him because the clerk's record does not contain a bill of costs. He argues that without a written bill of costs, the evidence is insufficient to support the assessment of court costs. The court of criminal appeals recently held that a complaint about the assessment of court costs can be raised for the first time on appeal. *See Johnson v. State*, 423 S.W.3d 385, 390–91 (Tex. Crim. App. 2014).

In light of appellant's complaint that the clerk's record did not contain a bill of costs, we ordered the Dallas County District Clerk to file a supplemental record containing the certified bill of costs associated with this case, and the clerk did so. *See Johnson*, 423 S.W.3d at 391–92 (construing rule of appellate procedure 34.5 and concluding that a bill of costs "can be prepared and added to the record via a supplemental clerk's record"). Because the record now contains a bill of costs supporting the assessment of costs in the trial court's judgment, appellant's complaint that the evidence is insufficient is moot. *See Franklin v. State,* 402 S.W.3d 894, 895 (Tex. App.—Dallas 2013, no pet.).

Appellant filed two objections to the supplemental clerk's record. He complains that the clerk did not file a "proper bill of costs" because (1) it is an unsworn, unsigned computer printout, and (2) the record does not indicate that the bill of costs was filed or brought to the trial court's attention before costs were entered in the judgment. These arguments have been addressed and rejected by the court of criminal appeals and this Court. *See Johnson*, 423 S.W.3d at 392–94; *Coronel v. State,* 416 S.W.3d 550, 555–56 (Tex. App.—Dallas 2013, pet. ref'd). We resolve appellant's third issue against him.

**CONCLUSION**

We resolve appellant's issues against him and affirm.

/Elizabeth Lang-Miers/

ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

130404F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL DWAYNE NEWMAN,
Appellant

No. 05-13-00404-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 3, Dallas County, Texas
Trial Court Cause No. F-1162630-J.
Opinion delivered by Justice Lang-Miers.
Justices Bridges and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 23rd day of July, 2014.