

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00362-CR

BOBBIE LEFELLE MORRIS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 85th District Court
Brazos County, Texas
Trial Court No. 13-01451-CRF-85, Honorable Dan Beck, Presiding

August 6, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Bobbie Lefelle Morris, appeals the trial court's judgment in which he was convicted of assault causing bodily injury, with both a prior conviction involving family violence and an affirmative finding of family violence in the instant case, and sentenced to ten years' imprisonment.[1]  On appeal to this Court, he challenges the sufficiency of the evidence to support said conviction.  We will affirm.

---

[1] *See* TEX. PENAL CODE. ANN. § 22.01(a)(1), (b)(2)(A) (West Supp. 2014).

## Factual and Procedural History

In Bryan, Texas, on February 24, 2013 at 3:11 a.m., Chelsea Toliver called Brazos County 911 seeking assistance after her husband, appellant, hit her during an argument that turned physical. As she was on the line with the 911 operator, Maria Twaddle, Toliver can be heard continuing to argue with an unidentified male, presumably appellant. The verbal exchanges between the two became so involved that Twaddle had to request several times that Toliver refrain from arguing with him so that Twaddle could get the relevant information to dispatch assistance for Toliver. By the end of the phone call, Twaddle dispatched officers from the Bryan Police Department to 808 Denise Street as a "no lights/no siren" call. Sometime before officers could get to the address, appellant left the home on foot.

BPD officer Aaron Arms responded to the dispatch and learned that the male suspect was known as "Bobbie" and had left the address wearing a grey hat, red sweatshirt, and dark jeans or pants. As he drove in the nearby vicinity, Arms spotted a man matching that description who responded to the name "Bobbie" and was later identified as appellant. Arms stopped appellant to discuss the incident. Appellant described the incident to Arms as a verbal argument between the couple that was escalating toward a physical altercation; he maintained that he left before it could turn physical though. Arms observed no injuries to appellant and arrested him on three outstanding capias pro fine municipal warrants. Appellant was cooperative and made no attempt to evade Arms.

Toliver testified that she lived with appellant and her son and that she and appellant had been married only weeks earlier, in January 2013, but had been in a

romantic relationship for approximately four years. She also testified about the details of the night and morning leading up to the altercation with appellant. Toliver testified that, on the night of February 23, 2013, she went over to a friend's house for a "girls' night" and left appellant and her son at home. She came home at about 1:30 a.m. on February 24 and went to bed, where appellant was already present and seemingly asleep. Appellant rolled over when he realized that Toliver had come home and gotten into bed. He then accused her of sneaking into bed, leading to the verbal argument between the two of them.

Toliver's accounts of the sequence of events that followed the verbal argument have varied. What is clear is that, during the escalating confrontation between the couple, the argument became physical and appellant struck Toliver a number of times, both about the face and on her arms. It also seems fairly clear from the record that, at some point, appellant grabbed Toliver by the hair and head-butted her at least once in an effort to keep her from leaving the house. What is less clear—due to Toliver's changing and blame-shifting accounts—is whether Toliver was the initial aggressor in the physical confrontation.

On the night of the incident, Toliver reported to Twaddle, the 911 operator, that appellant had "put his hands on [her]." "I have bruises and everything," she explained to Twaddle as she described injuries to her arms and, perhaps, to her face and neck as well; she had not fully ascertained the extent of her injuries at that point but did report that appellant had also pulled her hair and head-butted her.

Responding officer, William Dunford, testified that Toliver was in "a very excited state" when he first met with her, that she was breathing heavily and looked as though

3

she had just been crying. Largely consistent with her account to Twaddle, Toliver reported to Dunford that appellant became agitated after she returned home from the girls' night and "just started hitting her in the face." Toliver described to Dunford at least one strike by appellant to her face and reported that she put her arms up to protect her face from the subsequent blows from appellant. Consequently, Toliver complained of pain in and injuries to her arms as well. Indeed, Dunford examined her arms and observed several raised, red welts on the backs of both of her arms consistent with her account. He also observed redness and swelling above her right eye and below her left eye. He described her facial injuries as appearing to be recently inflicted and also "consistent with somebody who had just received a recent strike to the head or some kind of injury and it looked to be pretty severe." After describing her uninjured hands and her distressed behavior, Dunford explained that he observed nothing in the way of Toliver's physical appearance or in her demeanor that would suggest that it was she who was the aggressor in the incident. Appellant was charged with assault involving family violence, having been previously convicted of an offense involving family violence.

At trial on those charges, Toliver's version of events changed. First, she admitted that she did not want to be at trial and that she had made efforts to try to get the district attorney's office to abandon the prosecution. She described the girls' night out and the verbal argument prompted by her early-morning return to her home. She testified that it was she who escalated the verbal confrontation by first striking appellant, who then responded by striking her back. She testified that she then threw the covers over herself for protection and continued to strike out toward appellant from underneath the covers. He left the room, and she got dressed. Appellant returned to the room, and

4

more mutual strikes were exchanged. She then retreated into the restroom and locked herself in there. Appellant tried to coax her from out of the restroom so that he could continue hitting her. At some later point, she attempted to leave the house, but appellant grabbed her by her hair and head-butted her. At trial, she testified that appellant actually head-butted her two times throughout the course of the altercation. After that, she decided to call 911.

She maintained that appellant "wasn't mad at all," only "a little bit . . . upset;" characterized the entire night as "a big mistake," "a big misunderstanding;" and described appellant as a "good provider" for the family as they tried "to build their lives together." She never intended the matter to go this far, and she loves her husband. Nothing like this violent altercation had occurred between the couple in the past, explained Toliver, and nothing like this had happened since, as appellant and Toliver remained living together while appellant was out on bond.

When confronted with her original report to police, Toliver admitted that she never reported to the police that night that she was the one who struck first. She conceded and clarified that appellant did, in fact, hit her with his hands that night. She admitted that she reported bruising as a result and did not deny that she sustained bruises, but she quickly added at trial that she bruises very easily. She also admitted that it did hurt when he hit her. When looking at the photographs of her injuries admitted as State's evidence, she attempted to minimize the depicted swelling, denied pain associated with certain injuries to her face, described only minimal or fleeting pain with other injuries, and claimed no memory of having been hit in certain places on her face.

The jury heard three phone calls between Tolliver and appellant, calls recorded while appellant was in jail. In those calls, Toliver broached the issue of the physical altercation and the resulting effects on her face. She told appellant that, following the blows to her face, she "look[ed] ugly." Appellant responded that Toliver "doesn't need to be going to no club" because she already has a husband. He was adamant in his position that "a married woman should be at home." Throughout the phone calls, appellant attempted to justify having hit Toliver by maintaining that she had been going out too much and that he disliked that. He expressed at length and in enthusiastically impolite terms his feelings on married women going to clubs and his thoughts on the moral fiber and physical appearance of Toliver's friend who accompanied her to the club. Ultimately, he offers a limited apology to Toliver "that it had to come down to this [physical confrontation]," but, again, explained that her frequent visits to the club really made him angry.

The Brazos County jury found appellant guilty of assault against Toliver and assessed punishment at ten years' incarceration. The trial court imposed judgment and sentence accordingly. Appellant has timely appealed and contends that the evidence is insufficient to support his conviction for assault. More specifically, in his brief, appellant urges that "[t]he evidence in this case was too controverted and inconsistent for a rational trier of fact to have found that Appellant did not act in self-defense." We will overrule that contention and will affirm the trial court's judgment of conviction.

Applicable Law and Standard of Review

A person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a)(1). "Bodily injury" is

"physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (West Supp. 2014).  The statutory definition is "purposefully broad" and "encompass[es] even relatively minor physical contacts so long as they constitute more than mere offensive touching."  *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989) (en banc) (evidence of "bodily injury" sufficient when complainant suffered pain and bruise from appellant grabbing and twisting away wallet from her grasp).  Ordinarily, simple assault would be a Class A misdemeanor; however, when the State proves that (1) the offense was committed against a person with a family relationship to the actor and (2) the actor has been convicted previously of an offense involving family violence, the offense becomes a third-degree felony.  *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A).[2]

It is a defense to prosecution for such conduct if that person's conduct is justified under Chapter 9 of the Texas Penal Code.  *See id.* § 9.02 (West 2011); *see also id.* §§ 2.03, 9.31 (West 2011).  A defendant asserting a Section 2.03 defense, such as self-defense, has the burden of producing some evidence to support his claim of the defense.  *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Smith v. State*, 355 S.W.3d 138, 144 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).  Once the defendant produces that evidence, the State bears the ultimate burden of persuasion to disprove the raised defense.  *See Zuliani*, 97 S.W.3d at 594.  The burden of persuasion does not require that the State produce evidence disproving the defense; rather, it requires that the State prove its case beyond a reasonable doubt.  *See id.*; *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991) (en banc).  If the jury finds the

---

[2] In its Exhibit 2, the State introduced a judgment reflecting that Bobby Morris, with a birthdate of May 11, 1970, was convicted of "Assault-FV" in trial court cause number 08-04334-CRF-85 in the 85th District Court of Brazos County, Texas, on November 12, 2008.  Rebecca Wendt, a crime scene investigator for the BPD, testified that the fingerprint on that judgment matched appellant's known inked print that she took in court.  It is through this evidence that the State established the prior family-violence-offense element of the charged offense.  Appellant does not challenge this evidence of this element.

defendant guilty, then it implicitly rejects his defensive theory. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 914. So, in analyzing the sufficiency of the evidence in this context, we look not to whether the State presented evidence which refuted appellant's self-defense evidence; rather, we determine whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the charged offense beyond a reasonable doubt and also would have found against appellant on the defense of necessity beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914 (citing the well-established sufficiency-of-the-evidence standard as outlined in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). In other words, we review the sufficiency of the evidence under the familiar standard of review.

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the

8

proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

## Analysis

Here, appellant challenges the sufficiency of the evidence to support his conviction for assault. He maintains that the evidence was so conflicting and so inconsistent that "a rational trier of fact could not [have found] that Appellant did not act in self-defense." As is apparent from the record, there are, in fact, inconsistencies regarding the sequence of events in the altercation between Toliver and appellant. Most notably, there is conflicting evidence regarding the person who initiated the physical altercation between the two.

Viewing the evidence in the requisite favorable light and examining it for elements of the charged offense, however, we will conclude that, despite the inconsistencies, the evidence was sufficient, such that the jury could have rationally found the elements of assault beyond a reasonable doubt. Appellant was charged with assault, meaning that the State had to prove beyond a reasonable doubt that appellant intentionally, knowingly, or recklessly caused bodily injury to Toliver. *See* TEX. PENAL CODE ANN. § 22.01(a)(1).

The witnesses' accounts—though inconsistent in some respects—were nevertheless consistent in describing the elements of an assault by appellant on Toliver. Though, at trial, Toliver testified insistently that she struck appellant first, the jury was in the best position to weigh her credibility on the stand and her subsequent recantation of

her initial report to Officer Dunford that appellant struck her first. The jury was able to hear and understand that it was not until trial—a trial which Toliver admittedly did not want to proceed and with which she did not want to be involved—that she first introduced the idea that *she* was the aggressor and that appellant was only acting in self-defense. The evidence before the jury, including Toliver's at-trial account, confirms that appellant did strike her several times, grabbed her by her hair, and head-butted her at least once. Photographic evidence and testimony from both Dunford and Toliver demonstrate that, as a result of having been hit by appellant, Toliver exhibited redness and swelling near both of her eyes and had several red, raised welts on her arms. Toliver testified that she was bruised from the confrontation, and she admitted that it hurt when appellant hit her, though, at times in her testimony, she attempted to deny or minimize the pain she experienced.

Toliver's alternate, at-trial account, in which she claimed to have acted as the aggressor in the argument that followed her late-night return from her girls' night out and, in doing so, put appellant in the position of having to defend himself from Toliver's assault, was an account presented to the jury for its consideration. The jury obviously rejected that account. And such was its province to do. It is well-established that resolution of conflicts and inconsistencies in the evidence is the province of the jury as trier of fact. *See Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) (op. on reh'g); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979). Such conflicts will not call for reversal so long as there is enough credible testimony to support the conviction. *Bowden*, 628 S.W.2d at 784. Because resolution of conflicts or inferences therefrom lies within the exclusive province of the jury, it may choose to believe all, none, or some of the evidence presented to it. *See Heiselbetz v. State*, 906 S.W.2d

500, 504 (Tex. Crim. App. 1995) (en banc). More specifically, while the jury could have believed the account of the incident Toliver described at trial, it was "equally free" to disbelieve Toliver's trial testimony and, instead, rely on the evidence of her original reported account of the incident presented by the State. *See Bufkin v. State*, 179 S.W.3d 166, 170 (Tex. App.—Houston [14th Dist.] 2005) (op. on reh'g), *aff'd*, 207 S.W.3d 779 (Tex. Crim. App. 2006). The jury is also the exclusive judge of the credibility of witnesses. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994) (en banc) (per curiam).

Here, there is sufficient evidence from which the jury could (1) determine that appellant assaulted Toliver and (2) reject appellant's assertion of self-defense. We overrule appellant's sole point of error.

## Conclusion

Having overruled appellant's sole point of error, we affirm the trial court's judgment of conviction. *See* TEX. R. APP. P. 43.2(a).


Mackey K. Hancock
Justice

Do not publish.