# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00290-CR

**Michael Shawn Alexander, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. D-1-DC-13-201709, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Michael Shawn Alexander of the offense of assault family violence.[1] After Alexander pleaded true to three enhancement paragraphs alleging a total of eight prior convictions, including a prior conviction for the offense of assault family violence, the district court rendered judgment on the verdict and sentenced Alexander to 25 years' imprisonment. In a single issue on appeal, Alexander asserts that the district court erred in failing to instruct the jury on the law of self-defense. We will affirm the judgment of conviction.

## BACKGROUND

The jury heard evidence that on the night of March 25, 2013, Officers Michael Cornett and Jared Carruth of the Austin Police Department were standing outside a residence in East Austin, investigating a report of a possible suicide attempt, when they heard what Cornett characterized as a "high-pitched kind of shrill scream" coming from "somewhere

---

[1] *See* Tex. Penal Code § 22.01(b)(2).

in the immediate area." The officers headed in the direction where they had heard the scream and encountered two individuals on a driveway who told the officers that they had "heard a commotion and saw a male running from the general area" and pointed the officers east. Shortly thereafter, Cornett testified, the two officers observed a man, later identified as Alexander, standing outside a residence, "kind of banging on the door and yelling." The officers detained Alexander until other officers arrived. Cornett also entered the residence, where he encountered a female resident, later identified as Darnise Bowens, who informed him "that there had been an altercation" and that she had been assaulted.

Officer Troy Wiser of the Austin Police Department investigated the incident. Wiser testified that, upon arriving at the residence, he proceeded to interview Bowens. According to Wiser, during the interview, Bowens was "seated on a couch or chair in her living room and she was crying. She was real red faced. Her hair looked like it had been pulled and messed up in the back. She was—she was generally just real upset and seemed afraid." He added, "She was having difficulty speaking through her crying. She seemed just very nervous, afraid for her safety." Wiser testified that Bowens told him that she and Alexander had been married but were now divorced and that, during the course of an argument between them that night, Alexander had strangled her. Wiser observed "a bloodstain on her shirt toward the collar" but otherwise did not observe any blood on Bowens or any visible injuries to her neck. Following his interview with Bowens, Wiser proceeded to interview Alexander and, after concluding that Alexander was not being forthcoming regarding the night's events, subsequently arrested him for assault.

When Wiser arrived at the police station and began the booking process with Alexander, Wiser observed what appeared to be a "bite mark" on Alexander's upper right arm below his shoulder and what Wiser characterized as "a very small cut" on Alexander's upper lip.

2

Wiser testified that the bite mark was consistent with Bowens's description of the manner in which the assault had occurred. Wiser explained,

> [T]he way she had described that he had his arm around the front of her neck, that would have placed her face right about here (indicating) and during a struggle that would have been a defensive wound for her to try and get his arm away from her face. And so at that point I recognized that as being exactly where her face could have been during that point. And that's a common defense to try and get out of a choke hold or a strangulation.

Wiser added that it was "very unlikely" that the bite mark was the result of Bowens attacking Alexander. He testified, "If she was attacking him . . . it would be very unlikely . . . that she would be able to get in that position without having any interference from his arms pushing her away, holding her. It's just a very unlikely spot for an offensive wound." Wiser also explained that the cut on Alexander's lip could have been caused by Bowens's fingernails scratching his face as she was attempting to break free from Alexander choking her. On cross-examination, when asked if Alexander's injuries could have been consistent "with him being attacked" by Bowens, Wiser testified that "[a]nything is possible."

Bowens also testified and provided her account of the incident. According to Bowens, although she and Alexander were divorced, she had, prior to the incident, allowed him to resume living with her. On the night in question, she "wanted to take a bath and go to sleep" but Alexander was "insisting" that she spend time with him. Bowens testified that Alexander followed her into the bathroom and "put his arm around [her] neck and began to choke [her]." Bowens described the choking as Alexander "pulling" and "locking" his arm "tight" around her throat to the extent that Bowens feared he might break her neck. Bowens recounted that as she attempted to break free of Alexander—biting his arm in the process—she eventually screamed out and Alexander

3

released her, throwing her toward the bathtub. According to Bowens, she then ran out of the bathroom and into her bedroom, where Alexander "grabbed [her] again" and pushed her onto the bed, holding her down. Bowens testified that she again broke free from Alexander and ran into the living room, where she was "stopped by him again and pushed in the chair." At that point, Bowens explained, Alexander "got on top of [her] and began to put his hands around [her] neck. And his words were, 'I'm going to go to jail for something.'" Bowens added, "I was fighting him off, trying to keep him [away], but he overpowered me. And all I could say, you know, why are you doing this? And I saw, you know, the rage in his eyes." In an effort to get Alexander off of her, Bowens "began to punch" Alexander and "eventually he let [her] go." Bowens then "ran clean out of the house," and Alexander "ran after [her]." Bowens further testified that as Alexander chased her around the yard and repeatedly "grabbed" at her, she proceeded to scream in an attempt "to get help," which prompted Alexander to move away from her. Bowens then ran back inside the house, pushed furniture against the front door to prevent Alexander from entering, and hid in the bedroom until the police arrived.

One of the defense witnesses, Bobby Epstein, had spoken with Alexander following his arrest. According to Epstein, Alexander had told him that he was "in a fight with Darnise and that "she was upset about something." Epstein added, "He told me, 'I have blood on my shirt that was mine, I didn't hurt her, [] she was very angry."

During the charge conference, Alexander requested an instruction on the law of self-defense. The district court denied the request. The jury found Alexander guilty as charged, and the district court rendered judgment on the verdict, sentencing him to 25 years' imprisonment after Alexander pleaded true to the State's enhancement paragraphs as indicated above. This appeal followed.

4

**ANALYSIS**

In his sole issue on appeal, Alexander asserts that the district court erred in denying his request for an instruction in the jury charge on the law of self-defense. According to Alexander, the evidence tending to show that he was injured by Bowens during the incident, including the bite mark on his arm, the cut to his lip, and the blood on his and Bowens's shirts following the incident, sufficiently raised the issue of self-defense so as to require an instruction to the jury on the issue.

The district court shall provide the jury with "a written charge distinctly setting forth the law applicable to the case."[2] The law applicable to the case includes "statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence."[3] "[A] defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true."[4]

"[W]e do not apply the usual rule of appellate deference to trial court rulings when reviewing a trial court's decision to deny a requested defensive instruction."[5] Instead, "we view the evidence in the light most favorable to the defendant's requested submission."[6] "A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may

---

[2] Tex. Code Crim. Proc. art. 36.14.

[3] *Walters v. State*, 247 S.W.3d 204, 208-09 (Tex. Crim. App. 2007).

[4] *Shaw v. State*, 243 S.W.3d 647, 658-59 (Tex. Crim. App. 2007); *see* Tex. Penal Code § 2.03(c) ("The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense.").

[5] *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

[6] *Id*.

think about the credibility of the defense."[7]  "On the other hand, if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue."[8]

The elements of a self-defense claim are set forth in section 9.31 of the Penal Code, which provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force."[9]  "Thus, in order to justify the submission of a charge to the jury on the issue of self-defense, there must be some evidence in the record to show that the defendant was in some apprehension or fear of being the recipient of the unlawful use of force from the complainant."[10]  Additionally, by its express terms, the statute requires some evidence that the defendant had a "reasonable belief" that his use of force was immediately necessary to protect himself from the other's use or attempted use of unlawful force.[11]  Accordingly, to be entitled to a jury instruction on the issue of self-defense, there must be some evidence in the record of the

---

[7]  *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).

[8]  *Id*.

[9]  Tex. Penal Code § 9.31(a).

[10]  *Smith v. State*, 676 S.W.2d 584, 585 (Tex. Crim. App. 1984); *see Jones v. State*, 859 S.W.2d 537, 539-40 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd); *see also Vaughn v. State*, No. 03-10-00510-CR, 2011 Tex. App. LEXIS 5037, at *17 (Tex. App.—Austin July 1, 2011, no pet.) (mem. op., not designated for publication).

[11]  *See* Tex. Penal Code § 9.31(a).  A "reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor.  *Id*. § 1.07(a)(42).

6

defendant's state of mind or "observable manifestations" of the defendant's state of mind at the time he used force against the complainant.[12]

Viewed in the light most favorable to Alexander, the evidence summarized above tends to show that Bowens was "very angry" and "upset" during the altercation and that she injured Alexander as they fought—she bit his arm, cut his lip, punched him, and even caused him to bleed. But this evidence, without more, does not establish anything regarding Alexander's state of mind during the altercation. There is no evidence in the record from which a reasonable fact-finder could infer that Alexander was in "apprehension or fear" of Bowens at any point during the altercation or that Alexander had a reasonable belief that his use of force against Bowens was immediately necessary to protect himself from any unlawful force that might have been used by her. Accordingly, on this record, we cannot conclude that the district court erred in denying Alexander an instruction on the law of self-defense.[13]

---

[12] *See VanBrackle v. State*, 179 S.W.3d 708, 713 (Tex. App.—Austin 2005, no pet.); *Reed v. State*, 703 S.W.2d 380, 385 (Tex. App.—Dallas 1986, pet. ref'd). Examples of "observable manifestations" of a defendant's state of mind would include evidence tending to show that the defendant "called for help" during an altercation or that the defendant told the complainant to "leave [him] alone" as they struggled. *See Smith*, 676 S.W.2d at 586; *VanBrackle*, 179 S.W.3d at 714.

[13] *See Dyson v. State*, 672 S.W.2d 460, 463-64 (Tex. Crim. App. 1984); *Dominguez v. State*, 506 S.W.2d 880, 882 (Tex. Crim. App. 1974); *Lee v. State*, 442 S.W.3d 569, 578 (Tex. App.—San Antonio 2014, no pet.); *Davis v. State*, 268 S.W.3d 683, 697-98 (Tex. App.—Fort Worth 2008, pet. ref'd); *Broussard v. State*, 809 S.W.2d 556, 559-60 (Tex. App.—Dallas 1991, pet. ref'd); *Reed*, 703 S.W.2d at 384-85; *see also Gonzales v. State*, No. 03-12-00620-CR, 2014 Tex. App. LEXIS 12944, at *8-9 (Tex. App.—Austin Dec. 4, 2014, pet. ref'd) (mem. op., not designated for publication) (concluding that evidence tending to show that complainant injured defendant during altercation, without more, was insufficient to raise issue of self-defense); *Reynolds v. State*, No. 07-11-00500-CR, 2012 Tex. App. LEXIS 10501, at *8-11 (Tex. App.—Amarillo Dec. 19, 2012, no pet.) (mem. op., not designated for publication) (concluding that evidence tending to show that complainant kicked defendant prior to defendant striking complainant was insufficient to raise issue of self-defense because it did not establish that defendant had reasonable belief that his force was immediately necessary to protect himself from complainant's use of force against him; observing

We overrule Alexander's sole issue on appeal.

## CONCLUSION

We affirm the judgment of conviction.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   January 21, 2016

Do Not Publish

---

that "[s]elf-defense is not to be confused with retaliation"); *Heath v. State*, No. 05-10-01084-CR, 2012 Tex. App. LEXIS 4471, at *15-17 (Tex. App.—Dallas June 6, 2012, pet. ref'd) (op., not designated for publication) (concluding that evidence tending to show that knife used in altercation had defendant's blood on it and that defendant suffered minor injuries during altercation with complainant was insufficient to prove that appellant had reasonable belief that force was immediately necessary to protect himself from complainant); *Vaughn*, 2011 Tex. App. LEXIS 5037, at *19 ("In addition to the evidence that Vaughn initiated the altercation, there is also no evidence showing that Vaughn was in apprehension or fear of being the recipient of unlawful use of force from [the complainant] when he began hitting [her] and no evidence showing any observable manifestations of Vaughn's alleged belief that he needed to hit [the complainant] in order to prevent her from using unlawful force against him."); *Shepherd v. State*, No. 14-08-00970-CR, 2011 Tex. App. LEXIS 133, at *19-21 (Tex. App.—Houston [14th Dist.] Jan. 11, 2011, pet. ref'd) (mem. op., not designated for publication) (concluding that "the mere existence of" injury to defendant caused by victim does not establish that defendant had reasonable belief that use of force was immediately necessary to protect himself from victim).

8