# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-21-00437-CR

---

**Jerry Neill Sharpe, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE COUNTY COURT AT LAW OF BURNET COUNTY
### NO. M33653, THE HONORABLE LINDA M. BAYLESS, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

The jury found Jerry Neill Sharpe guilty of assault with bodily injury and family violence based on his spanking of his teenaged daughter with his belt. *See* Tex. Penal Code § 22.01(a)(1). The court assessed sentence consistent with the jury's verdict at 365 days in jail suspended for a two-year term of community supervision. Sharpe contends on appeal that the trial court erred by omitting an instruction he did not request regarding parental duty to discipline children and the law prohibiting state agencies from violating parents' fundamental duty to direct the upbringing of their child. Sharpe further contends that the court erred by refusing to instruct the jury as he requested that "the fact that a child is spanked on its own does not evidence family violence." He also contends that legally insufficient evidence supports the guilty verdict. We will affirm the judgment.

## BACKGROUND

Sharpe admits that he spanked his then-fifteen-year-old daughter, D, by hitting her with his firefighter's uniform belt while attempting to discipline her. Photographs show bruises on several parts of D's body that witnesses testified were consistent with belt strikes. The contested issue at trial and here was whether his use of force was reasonable. We will summarize the testimony to provide context for the reasonableness determination, focusing primarily on testimony by D and Sharpe because they were the only occurrence witnesses.

D—twenty years old at the time of trial—testified as did Sharpe. Other witnesses included Department of Family and Protective Services investigator Kristin Cantu, Burnet County Sheriff's Deputy Brian Richey, Burnet County Sheriff's Investigator Kathy Sievers, and Sharpe's sister, who lived with Sharpe and D until a few weeks before the incident and was telephoned during the incident.

Sharpe and D had a confrontation on October 5, 2016, followed by a tense two weeks and leading to the October 19, 2016 interaction at issue in this case. Sharpe did not approve of D spending time with an almost-eighteen-year-old boy. On October 5, 2016, D forged Sharpe's signature on a note requesting release from school for a non-existent doctor's appointment and telephoned Sharpe to ask permission to study then to stay overnight at a friend's house, when instead she spent that time with her boyfriend; as part of the scheme, D had her boyfriend impersonate the grandfather on the phone with Sharpe. When Sharpe suspected something was amiss and drove over to speak to the "friend's" grandfather about the sleepover, D met Sharpe outside of a dark, locked house, lied that she was going to the back of the house to get the grandfather, and fled to her boyfriend at his grandparents' house without the grandparents' knowledge. Sharpe called the sheriff's office for help in finding D, and the next

2

morning the boyfriend's grandmother took D to the sheriff's office. While there, D reportedly yelled at Sharpe, "I hate you, I will do any and everything I can to get away from you." She was upset when she was forbidden to see her boyfriend.

Kathy Sievers interviewed D after the October 5 incident while working as a Burnet County Sheriff's Investigator. Sievers testified that the boyfriend's grandmother brought D in because she claimed Sharpe had punched, hit, and kicked her, knocked her down, and sat on her. But Sievers saw no marks on D consistent with that claim. She said that, when D yelled at Sharpe in the office, he responded calmly at first, raising his voice to try to be heard. Sievers testified that D's mother denied the complainant's allegation that she had seen Sharpe strangle the mother; the mother described the complainant as a "drama queen." The investigator testified, however, that the pictures from after the October 19 incident did not reflect appropriate disciplinary action by a parent against a fifteen-year-old girl.

On October 19, 2016, D went to school early for basketball practice, took the PSAT, had tutorials over her lunch period instead of eating, then had basketball practice after school until about 6:30 or 7 p.m. Sharpe picked her up from school, they got food at Sonic, and they went home. She sat on the living room floor to watch television and eat. Sharpe told her to change the channel, but she did not like his programming choices. He told her again to change the channel, and she tossed the remote when he asked for it—she and Sharpe differed only on whether she tossed it to him or out in front of herself; she admitted that tossing the remote was a bit "snotty" and "defiant" with a little "teenage attitude." He yelled at her to stop eating and to go to bed. As she tried to take another bite, he shoved her hamburger in her face and then into her hair as she turned her face. She testified that she then tried to go to her room, but he testified that she continued to defy him by trying to get food from the kitchen. D testified that Sharpe

3

grabbed her by the throat such that she could barely breathe. She pushed his arm away and made what she testified was a "snotty" comment to get away from him.

D went to her bed, and Sharpe told her to get up and put her arms around a pole in the middle of the room; she did not comply because she did not want to get hit. He told her he was going to hit her three times and that, if she moved, she would get three more. She tried to escape, but was trapped. She testified that Sharpe sometimes hit her with the belt and buckle on her backside, her arms, legs, chest, feet, and hands. She said she was on her back, curled into a ball with her feet up trying to kick him away. She asked him to stop, but he told her he was doing it out of love not anger; D testified, however, that his whole body was tense and almost shaking and his face was red. She said, "It was rage." She asked him to look in the mirror and see if he looked like love or rage; he stopped for a second, then continued to yell at her, tried to get her to stand at the pole, and kept trying to hit her. Eventually, he picked her up and tossed her on her back and she curled into a defensive posture on her back. At the time, she weighed 110 pounds. Sharpe was a firefighter. She estimated that the spanking took about an hour and estimated that he hit her between thirty and forty times; she said that the welts and red marks from some of the swats dissipated by the next day when pictures were taken. She said the spanking hurt a lot.

D testified that Sharpe then wrapped her finger because he thought he might have broken it and gave her ice for her legs. He told her to go to bed, then told her to come and watch a debate on television with him. She watched it for about an hour and a half then went to bed without having eaten more. After she went to bed, he came and got into bed with her, which did not make her feel better.

4

D testified that Sharpe took her to school the next morning and told her not to tell anyone. A friend saw a bruise on her wrist then took her into the locker room, made her strip, took pictures of the marks on her body, then made her go to the counselor's office. She eventually went to the hospital where more pictures were taken. D testified that the hospital staff feared she had internal bleeding, but she did not. She testified that she was on bed rest for about a week and that the bruises lasted well over a month. D testified that she loves Sharpe but wanted him to be held accountable. She said his actions were not okay.

Sharpe testified that, when he requested the remote control on October 19, D slapped it in his hand when he asked her to put it in his hand. He said they had a tug-of-war over her backpack after he sent her to her room because she had snacks in it. Before he spanked D on October 19, he called his sister on the phone for help. When his daughter talked badly about him to his sister, he threatened to call the sheriff's department so they could watch him spank her, but he decided against that. He said that while spanking D he held his belt doubled with the two ends in his hand and never let the buckle out of his hand. When D refused to turn around so he could spank her buttocks, he attempted to spank her from the side. He said her arm got hit when she grabbed the belt to prevent it from hitting her butt; she also jammed her finger when she released the belt and grabbed him and tried to throw him to the ground. He testified that he then whipped her feet out from under her then gently laid her on her back, but she started kicking him in the chest as he tried to spank her. She eventually sat down and started praying, he gave her two more swats, and the struggle was over. He thought the spanking took only minutes and that he swatted her maybe ten times. He said he had grown up with the three-licks, no-moving rule. He admitted he probably had "fire" in his eyes during the incident. He said that when their struggle ended, she went out and watched the debate with him. Her attitude was better.

5

Sharpe's sister testified that she had never seen Sharpe punish D inappropriately while she lived with them. She confirmed that she and Sharpe had been raised with the three-licks, no-moving rule. She did not like the photos of D's bruises and agreed that she did not believe at this point in her life that Sharpe administered an appropriate form of discipline that night.

Burnet County Sheriff's Deputy Brian Richey testified that he responded to the school's October 20, 2016 report of abuse. He testified that D's injuries stood out and caused him to remember them five years later at the July 2021 trial. He testified that the photos in evidence were in line with the injuries he saw in 2016. He said he saw about seven bruises, some of which were consistent with marks from the belt rather than a buckle, which were consistent with about ten blows. He testified that D told him Sharpe hit her on the head with the buckle, but he did not see injuries on her head. He testified that her injuries were not in line with what an ordinary, prudent man would do to punish his child.

Department of Family and Protective Services Investigator Kristin Cantu testified that she saw photographs of D's injuries, watched her interview at the child advocacy center, and interviewed Sharpe. She testified that D's pinkie was sprained, not broken, and that the bruises were consistent with blows from a belt. D had bruises on her arm, back, left side, leg and thigh, wrist, and buttocks. She testified that it was not reasonable to have spanked D in this manner based on all of the actions that occurred prior.

Licensed Professional Counselor Robert Henley testified regarding what the child told him during a session with him. It tracked her testimony at trial and, in many ways, Sharpe's testimony regarding the outline of events, including that she had an attitude and was mouthing off to Sharpe. Henley testified that he held two joint sessions with Sharpe and the child. She

6

wanted Sharpe to apologize and Sharpe declined. Sharpe admitted striking her, but felt that he acted appropriately, not excessively, did not hurt her, and was within his right as a parent. Henley testified that corporal punishment should not be used after fourth grade and definitely not between a father and maturing female. Henley agreed that Sharpe used other disciplinary tools like removing phone privileges and that different and escalating misbehavior can require different and escalating discipline. He testified that legally permissible spanking can sometimes unintentionally leave a bruise. He agreed that lying to police and staying at an older boy's house without permission was venturing down a wrong path that needed intervention. Henley testified that the incident was not a spanking and was not reasonable or appropriate.

Sharpe opined that his sister was reasonable and said that the sheriff's detective, Henley, Richey, and Cantu seemed reasonable. But he testified that, even though they deemed the level of force he used on his daughter unreasonable, he believed it was reasonable. He testified that he regretted spanking his daughter that evening "because of all of the interference from these people. If that hadn't happened, she'd be—she might have learned what I was trying to teach her that—and when they got a hold of her, you know, they're all telling her she's a victim of a crime, she's abused and it's all a bunch of—" at which time his attorney interrupted him. He finished by testifying that he was trying to discipline his daughter, to change her behavior because her behavior was escalating and getting out of hand and an intervention had to happen.

I.      **Sharpe has not shown charge error.**

When reviewing jury charge errors, we first determine whether error exists and then, if there is error, whether the error requires reversal. *Almanza v. State*, 686 S.W.2d 157, 171

7

(Tex. Crim. App. 1984) (op. on reh'g). The degree of harm necessary to require reversal depends on whether appellant timely objected at trial. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). If the appellant objected timely at trial, reversal is required upon a showing of some harm to the appellant; without a timely objection, reversal is only required upon a showing of egregious harm. *Id*.

When the issue was preserved by a timely request made during the charge conference, we must reverse if the charge error caused "some harm." *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020). "'Some harm' means actual harm and not merely a theoretical complaint," and we will reverse "if the error was calculated to injure the rights of the defendant." *Id*. at 347. In evaluating the extent of the harm, we review the entire record assessing: the jury charge in its entirety; all of the evidence including the contested issues and the weight of the probative evidence; counsels' statements during voir dire and at trial; and any other pertinent information in the record. *Id*.

If the defendant failed to make a timely objection to the charge at the trial court, we will reverse only if the error was so egregious that it deprived the defendant of a fair trial. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "A jury charge which omits an essential element of the offense as alleged in the indictment is fundamentally defective." *Markham v. State*, 635 S.W.2d 153, 154 (Tex. App.—San Antonio 1982, no writ). Although our review is not limited to a part of the charge standing alone, "the crucial part of the charge in determining the existence of fundamental error is that part where the law is applied to the facts." *Hanks v. State*, 625 S.W.2d 433, 435 (Tex. App.—Houston [14th Dist.] 1981, no writ). When determining whether a defensive instruction should have been provided, appellate courts view the evidence in the light most favorable to the defendant's requested instruction. *Bufkin v. State*,

8

207 S.W.3d 779, 782 (Tex. Crim. App. 2006). In general, a defendant is entitled to a jury instruction on a defensive issue if the defensive issue is raised by the evidence, regardless of the strength or credibility of that evidence. *Farmer v. State*, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013); *see also Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). However, an instruction is not required if the evidence does not establish the defense. *Williams v. State*, Nos. 03-14-00228—00229-CR, 2016 WL 370019, at *4 (Tex. App.—Austin Jan. 27, 2016, no pet.) (mem. op., not designated for publication).

Jury-charge error is considered egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *State v. Ambrose*, 487 S.W.3d 587, 597 (Tex. Crim. App. 2016). In assessing whether egregious harm exists, we consider the entire jury charge; the state of the evidence, including contested issues and the weight of the probative evidence; counsel's arguments; and any other relevant information revealed by the entire trial record. *Id*. at 598; *Almanza*, 686 S.W.2d at 171. "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)).

### A. The law and record do not support reversal for the absence of an instruction on the Family Code's permission of corporal punishment.

By his first issue, Sharpe contends that the trial court erred by failing to instruct the jury on provisions of Texas law for which no instruction was requested. The trial court instructed the jury in the application section that "[t]he use of force, but not deadly force, against a child younger than eighteen years is justified if the actor is the child's parent and when and to

9

the degree the actor reasonably believes the force is necessary to discipline the child." The court

further instructed the jury:

> Therefore, if you find that the defendant, Jerry Sharpe, did commit assault bodily injury, but you further find, or have a reasonable doubt thereof, that the defendant was the parent of [D] and the force was used when and to the degree the defendant reasonably believed the force was necessary to discipline [D], you will find the defendant not guilty.

Consistent with the Penal Code, these instructions informed the jury that Sharpe was permitted to

use force he reasonably believed was necessary to discipline his daughter. *See* Tex. Penal Code

§ 9.61(a).

Sharpe asserts that the trial court should have instructed the jury on the

following issues:

- under the Family Code, a parent has the duty of care, control, protection, and reasonable discipline of the child. *See* Tex. Fam. Code § 151.001(a)(2);

- Parents are among the limited group of persons who may use corporal punishment for the reasonable discipline of the child. *Id.* § 151.001(e)(1); and

- "A state agency may not adopt rules or policies or take any other action that violates the fundamental right and duty of a parent to direct the upbringing of the parent's child." *Id.* § 151.003.

Sharpe concedes that he did not request an instruction on the Family Code

sections. A trial judge has no duty to instruct the jury sua sponte on unrequested defensive issues

because an unrequested defensive issue is not the law "applicable to the case." *Vega v. State*,

394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *see* Tex. Code Crim. Proc. art. 36.14. A

defendant cannot complain on appeal about the trial judge's failure to include a defensive

instruction that he did not preserve by request or objection: he has procedurally defaulted any such complaint. *Vega*, 394 S.W.3d at 519.

The trial court did not err by failing to *sua sponte* instruct the jury on these Family Code sections. The Court of Criminal Appeals has counseled against using instructions based on non-Penal Code statutes:

> [G]enerally speaking, neither the defendant nor the State is entitled to a special jury instruction relating to a statutory offense or defense if that instruction (1) is not grounded in the Penal Code, (2) is covered by the general charge to the jury, and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or a defense. In such a case, the non-statutory instruction would constitute a prohibited comment on the weight of the evidence.

*Walters v. State*, 247 S.W.3d 204, 212 (Tex. Crim. App. 2007); *see also Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012).

The prohibition of state agencies adopting rules or policies or taking actions that violate the fundamental right and duty of a parent to direct the upbringing of the parent's child in Texas Family Code Section 151.003 is not relevant to the offense here. The Texas Penal Code and its assault statute were adopted by the Legislature, not a state agency. There is no evidence or argument that any state agency was present or involved when Sharpe struck his child with a belt. Whether Sharpe believes that a state agency later overstepped its boundaries and interfered with his parental duties in response to this incident is irrelevant to whether he committed a criminal offense in violation of the Texas Penal Code on October 19, 2016. The trial court was not obligated to instruct the jury on Section 151.003.

The trial court was not required to instruct the jury that Texas Family Code Section 151.001(a)(2) provides that parents have the duty to reasonably discipline their child and

11

that Texas Family Code Section 151.001(e)(1) includes parents among the group who can use corporal punishment to discipline children. The trial court correctly instructed the jury that parents can justifiably use non-deadly force to discipline their children to the degree the parent reasonably believes the force is necessary to discipline the child consistent with Texas Penal Code Section 9.61(a). Sharpe does not persuade us by authority or argument that the trial court erred by instructing the jury, consistent with the Texas Penal Code, that he was *justified* to discipline his daughter with force he reasonably believed was necessary but not that, under the Family Code, he had the general duty to discipline his daughter and that as a parent he could use corporal punishment. His duty and the hypothetical use of corporal punishment were not at issue; whether he exceeded the permissible bounds of the law was at issue and properly presented by the instructions given.

The reasonableness of Sharpe's action was the central contested issue. We find no error in the court's instruction. Even if the omission were error, it is not egregious in light of the evidence admitted, the charge given, and the arguments made. We overrule issue one.

### B. The law and record do not show the trial court erred by declining to give the requested instructions on spanking and family violence.

By his second issue, Sharpe contends that the trial court erred by declining to instruct the jury as he requested that "[t]he fact that a child is spanked on its own does not evidence family violence." The requested language is an excerpt from the conditional grant of a writ of mandamus requiring a trial court to withdraw a protective order against a father in an underlying divorce case. *See In re Wean*, No. 03-10-00383-CV, 2010 WL 3431708, at *5 (Tex. App.—Austin Aug. 31, 2010, orig. proceeding). Later in the same paragraph, the *Wean* court wrote that, "for corporal punishment to constitute family violence, there must be some

12

evidence—such as severity of injury, type of instrument used, or mental or emotional state of the perpetrator—that would transcend a reasonable level of parental discretion regarding discipline." *Id.* The photographs in that case did not show bruising, *id.*, the evidence consistently showed that the father spanked the children's buttocks only, *id.* at *7, and the mother testified that the father never lost his temper when spanking, *id.* The mother testified, however, that his spankings always left a mark or welt. *Id.*

In the charge conference, Sharpe's attorney also requested the following language: "Infrequent spankings of a child that leave marks or visible bruises 24 hours after spanking do not constitute sufficient evidence to demonstrate that a parent engaged in conduct that endangered a child's physical or emotional well-being." *See In re A.S.*, 261 S.W.3d 76, 88 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). The requested language is an excerpt from an opinion reversing a trial court's judgment based on a conclusion that a father's spanking a child endangered the child's physical or emotional well-being. *See id.* at 87-88; *see also* Tex. Fam. Code § 161.001(1)(E). The court found that evidence that the spanking of a child who wet his pants that did not leave a mark and for which no criminal complaint was filed did not qualify as endangerment under Section 161.001(1)(E). *A.S.*, 261 S.W.3d at 88.

Sharpe contends that, had the trial court given his requested instructions, the jury could have easily concluded that some spanking is not evidence of family violence and thus that there was no assault as charged. He contends that the instruction would have authorized an acquittal because the instruction would say that an offense did not occur.

Sharpe's argument fails on several counts. As set out above, the Court of Criminal Appeals has counseled against instructions that are not grounded in the Penal Code, are covered by the general charge to the jury, and focus the jury's attention on a specific type of

13

evidence that may support an element of an offense or a defense. *Kirsch*, 357 S.W.3d at 651; *Walters*, 247 S.W.3d at 212. Foremost, the proposed instructions are not warranted because they do not track the law applicable to this case. The requested instructions are language from civil cases based on the Family Code standards for protective orders and endangerment standards rather than the Penal Code. *A.S.*, 261 S.W.3d at 88; *Wean*, 2010 WL 3431708, at *5; *compare* Tex. Fam. Code §§ 85.001(a) (protective order justified if family violence has occurred and is likely to occur again) & 161.001(1)(E) (engaging in conduct or knowingly placing the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child supports parental-rights termination) *with* Tex. Penal Code § 22.01(a)(1) (assault occurs when person intentionally, knowingly, or recklessly causes bodily injury to another). The Legislature selectively imports Family Code concepts into the criminal law. The Code of Criminal Procedure adopts the Family Code's definition of family violence when authorizing a finding of family violence. *See* Tex. Code Crim. Proc. art. 42.013 (adopting Tex. Fam. Code § 71.004). The Penal Code imports Section 71.004's definition of family violence in describing offenses and defenses. *See* Penal Code §§ 22.04(l)(2)(B)(i) (defense to the offense of injury to a child, elderly individual, or disabled individual), 21.007(f)(2) (terroristic threat). These adoptions make the Legislature's choice *not* to adopt Family Code sections 85.001(a) and 161.001(1)(E) standards for protective orders and rights termination into the assault offense and the parental-discipline force justification speak even louder. *See* Tex. Penal Code §§ 9.61(a) (parental discipline force justification), 22.01(a) (assault). Whether a spanking can support a finding of the offense of assault with bodily injury and family violence should not be assessed on instructions based on inapposite Family Code concepts.

Further, the concept that a "spanking without more"—i.e., one that does not reach the level of force that overcomes the parent-child force justification—would support acquittal is addressed appropriately by the instructions given. In the charge given, the court defined family violence for the jury as follows:

> The following offenses, when committed against another with whom a person has a family, household, or dating relationship, are family violence: murder, capital murder, manslaughter; criminally negligent homicide; assault; sexual assault; aggravated assault; aggravated sexual assault; injury to a child, elderly individual or disabled individual; abandoning or endangering a child; deadly conduct; terroristic threat; aiding suicide; tampering with a consumer product; leaving a child in a vehicle; harassment by a person in certain correctional facilities; harassment of a public servant; kidnapping; aggravated kidnapping; indecency with a child; and continuous violence against the family.

This definition is a list of Penal Code offenses that can support a family-violence finding. A family-violence finding in this case must be based on a spanking that is an assault—the only offense on the list charged in this case. The court defined Assault Causing Bodily Injury—Family Violence as follows: "A person commits [an] offense if the person intentionally, knowingly, or recklessly causes bodily injury to another with whom the person has a family, household, or dating relationship." Tex. Penal Code § 22.01(a)(1) (assault); *see also* Tex. Code Crim. Proc. art. 42.013 (family-violence finding[1]). Bodily Injury was defined in the charge as

---

[1] The Code of Criminal Procedure provides that, "if the court determines that the offense involved family violence, as defined by Section 71.004, Family Code, the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case." Tex. Code Crim. Proc. art. 42.013.

The Family Code defines "family violence" as:

(1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent

15

"Physical pain, illness, or any impairment of physical condition." Tex. Penal Code § 1.07(a)(8). The court applied the definitions when charging the jury that "if you find from the evidence beyond a reasonable doubt that [Sharpe] did then and there intentionally, knowingly, or recklessly cause bodily injury to [D], a member of his family or household, then you will find the defendant guilty as charged." This charge was followed by the defensive charge discussed above on the justification for a parent's use of a degree of force reasonably believed necessary to discipline the child. To the extent that a "spanking without more" means that the parent did not exceed the permissible bounds of the justified force, the jury was instructed on that issue, and the omission of Sharpe's requested instructions was neither error nor harmful.

Sharpe's argument for the "spanking without more" instruction clashes with the Court of Criminal Appeals's admonition that instructions must not comment on the weight of the evidence or focus the jury's attention on a specific type of evidence that may support an element of an offense or a defense. *See Walters*, 247 S.W.3d at 212. The requested instruction focuses the jury on whether the evidence is something "more" than a spanking without defining what "more" is sufficient to show family violence. That instruction and the instruction that spankings that do not leave a bruise lasting more than a day are not supported by the evidence in the record.

---

physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself;

(2) abuse, as that term is defined by Sections 261.001(1)(C), (E), (G), (H), (I), (J), (K), and (M), by a member of a family or household toward a child of the family or household; or

(3) dating violence, as that term is defined by Section 71.0021.

Tex. Fam. Code § 71.004.

16

The trial court did not err by concluding that Sharpe was not entitled to the requested instructions, and Sharpe was not harmed by their omission. We overrule issue two.

## II.  The evidence is sufficient to support the judgment.

Sharpe contends that the State failed to overcome the justification for his use of force in disciplining D. Evidence is sufficient to support a conviction when, after considering all of the evidence in the light most favorable to the prosecution, a reviewing court concludes that any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Hernandez v. State*, 556 S.W.3d 308, 315 (Tex. Crim. App. 2017); *McCall v. State*, 635 S.W.3d 261, 272 (Tex. App.—Austin 2021, pet. ref'd). The trier of fact is the sole judge of the weight and credibility of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016); *see also* Tex. Code Crim. Proc. art 36.13 (explaining that "the jury is the exclusive judge of the facts"). Thus, when performing our review, we may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the factfinder. *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018); *see also Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we must defer to the credibility and weight determinations of the factfinder. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016); *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). When the record supports conflicting reasonable inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that resolution. *Zuniga*, 551 S.W.3d at 733; *Cary*, 507 S.W.3d at 757. Ultimately, we must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict."

17

*Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)); *accord Arroyo*, 559 S.W.3d at 487.

The essential elements of the offense are those as defined by the hypothetically correct jury charge for the case. *Hernandez*, 556 S.W.3d at 315. A hypothetically correct jury charge reflects the governing law, the indictment, the State's burden of proof and theories of liability, and an adequate description of the offense for the particular case. *Id*. It includes the statutory elements of the offense as modified by the indictment. *See id*. at 312–13; *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012). The relevant elements here are whether (1) Sharpe intentionally, knowingly, or recklessly (2) caused bodily injury to D, a member of his family or household. *See* Tex. Penal Code § 22.01(a)(1); *McCall*, 635 S.W.3d at 272. We must also consider whether there is reasonable doubt concerning the parental-discipline force justification under Texas Penal Code Section 9.61. "The use of force under section 9.61 is not justified simply because of a parent's subjective belief that the force is necessary; rather, the use of force is justified only if a reasonable person would have believed the force was necessary to discipline the child or to safeguard or promote the child's welfare." *Quattrocchi v. State*, 173 S.W.3d 120, 122 (Tex. App.—Fort Worth 2005, pet. ref'd) (quoting *Assiter v. State*, 58 S.W.3d 743, 748 (Tex. App.—Amarillo 2000, no pet.)). The "reasonable belief" standard is an objective standard. *Id*.; *see also* Tex. Penal Code Ann. § 1.07(a)(42) (defining "reasonable belief" as that held by "an ordinary and prudent man in the same circumstances as the actor"). The jury may infer consciousness of guilt from an accused directing the victim not to tell anyone what happened between them. *Lightsey v. State*, No. 03-19-00136-CR, 2021 WL 1182406, at *6 (Tex. App.—Austin Mar. 30, 2021, pet. ref'd).

Sufficient evidence supported the jury's finding of guilt. There was ample evidence about the background conflict between Sharpe and D and the acute conflict on October 19, 2016. D had been dishonest, disobeyed Sharpe, and been "snotty" to him. There was conflicting evidence on the details of how the confrontation played out, the number of times Sharpe hit her, and whether he hit her with a buckle. But there was no dispute that Sharpe spanked his daughter with a belt at least ten times, and D testified that he struck her as many as forty times. More critically, the jury saw the effect of the blows he struck in the pictures of her bruises. D testified that Sharpe told her not to tell anyone what had happened, from which the jury could infer Sharpe's consciousness of guilt. The jury heard DFPS investigator Cantu testify that the spanking was "not reasonable," Deputy Richey testify that D's injuries were not in line with what an ordinary, prudent man would do to punish his child, Investigator Sievers testify that the photos of D's injuries did not look like the results of an appropriate disciplinary action by a parent against a 15-year-old girl, counselor Henley testify that "[t]his wasn't a spanking and, no, it was not [reasonable and appropriate]," Sharpe's sister testify that she did not believe that the discipline Sharpe administered was an appropriate form, and D testify that she was on bed rest for a week and that the bruises lasted more than a month. The jury also heard Sharpe testify that, despite all of the other adult witnesses testifying that the level of force he used on D was unreasonable, he believed it was reasonable. They heard him testify that he regretted spanking his daughter that evening, not because of the force he used and the injuries he inflicted, but because of all of the interference from these people with D learning a lesson.

The jury could have considered all of the evidence, resolved conflicts, made reasonable inferences, and reached the verdict it did. Legally sufficient evidence supports the judgment. We overrule issue three.

19

**CONCLUSION**

Finding no merit to the issues Sharpe raises on appeal, we affirm the trial court's judgment.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Kelly and Smith

Affirmed

Filed:   August 31, 2022

Do Not Publish